## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRIAN EX KORONA,** | ) |
| **a.k.a., Brian Edward Xavier Korona,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )     **Case No. 19-CV-0058-CVE-JFJ** |
| | ) |
| **SCOTT NUNN,[1]** | ) |
| | ) |
| **Respondent.** | ) |

## OPINION AND ORDER

Petitioner Brian EX Korona a.k.a., Brian Edward Xavier Korona, a state inmate appearing pro se,[2] commenced this action in March 2019 by filing an amended 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 3).[3]  Korona seeks federal habeas relief from the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2014-631, and identifies four claims.  Respondent Scott Nunn filed a response (Dkt. # 17) in opposition to the amended petition and provided state court records (Dkt. ## 17, 18, 19, 28-1) necessary to adjudicate

---

[1]    Korona is incarcerated at the James Crabtree Correctional Center (JCCC), in Helena, Oklahoma.  The Court therefore substitutes the JCCC's current warden, Scott Nunn, in place of Rick Whitten, as party respondent.  FED. R. CIV. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.  The Clerk of Court shall note this substitution on the record.

[2]    The Court liberally construes Korona's pleadings because he appears pro se.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3]    Korona initiated this action in January 2019 by filing a handwritten "notice of intent to appeal" (Dkt. # 1), which this Court construed as a deficient pleading intended to commence a federal habeas action.  Korona filed an amended petition, on the court-approved form, in March 2019.

Korona's claims.  Korona filed a reply brief (Dkt. # 24), and, with leave of Court, Nunn filed a sur-

reply brief (Dkt.

# 28).  In 2021, Korona filed a motion (Dkt. # 31) requesting a stay of this habeas proceeding

pending his exhaustion of available state remedies as to a fifth claim that is not raised in the

amended petition.  Nunn filed a response (Dkt. # 32) in opposition to the motion.  For the reasons

discussed below, the Court denies the motion to stay and denies the amended petition for writ of

habeas corpus.[4]

## BACKGROUND

**I.      Underlying facts[5]**

Korona and J.K. were married in February 2012, and their son, J.B.K. was born in November

2012.  Dkt. # 18-3, Tr. Trial vol. 2, at 35, 38.[6]  In February 2013, J.K. petitioned for and obtained

a protective order that prohibited Korona from having any contact with J.K. or their son.  Dkt. # 18-

3, Tr. Trial vol. 2, 38-40; Dkt. # 18-5, Trial Exs., at 3-13.  The protective order was served on

Korona on February 13, 2013.  Dkt. # 18-5, Trial Exs., at 14.  J.K. also filed for a divorce and was

temporarily granted full custody of J.B.K.  Dkt. # 18-3, Tr. Trial vol. 2, 41-43.  Korona and J.K.

attempted to reconcile, on one or more occasions, despite the protective order, but by the end of

2013 Korona was not living in the same house as J.K. and their son.  Dkt. # 18-3, Tr. Trial vol. 2,

---

[4]      In his reply brief, Korona suggests that an evidentiary hearing may be necessary.  Dkt. # 24, Reply Br., at 1.  Having reviewed the case materials, the Court finds that the amended petition can and should be adjudicated on the existing record.  The Court therefore denies Korona's request for an evidentiary hearing.

[5]      As necessary, additional facts relevant to Korona's specific claims are developed in the discussion section.

[6]      For consistency, the Court's citations refer to the CM/ECF header pagination.

at 44-46, 102.  J.K. had the locks changed in January 2014, and Korona did not have a key.  Dkt. # 18-3, Tr. Trial vol. 2, at 45-46.

On the afternoon of February 7, 2014, J.K. and J.B.K. had lunch with J.K.'s friend, went to the grocery store, and returned home.  Dkt. # 18-3, Tr. Trial vol. 2, at 31-33, 46-49.  When J.K. and J.B.K.. arrived home, J.K. took J.B.K. inside.  Dkt. # 18-3, Tr. Trial vol. 2, at 49.  Before J.K. could go outside to get the groceries, Korona came "rushing out from the back bedroom and tackle[d]" J.K.  Dkt. # 18-3, Tr. Trial vol. 2, at 49, 52.  Korona and J.K. both fell to the floor, and Korona placed his hands around J.K.'s neck and began strangling her.  Dkt. # 18-3, Tr. Trial vol. 2, at 52.  Eventually, Korona let go of J.K.'s neck but he then bound her wrists and ankles with duct tape.  Dkt. # 18-3,Tr. Trial vol. 2, at 53-54.  After Korona threatened to kill her, J.K. begged him to stop and told him, falsely, that she loved him and wanted to work on saving their marriage.  Dkt. # 18-3, Tr. Trial vol. 2, at 55.

Korona told J.K. they could fix their relationship if they "move back to New York" to "get away from everybody," removed the duct tape from her ankles, forced J.K. to walk to her Mercury Mountaineer while hiding her bound wrists with their son's diaper bag, and placed J.B.K. in a car seat.  Dkt. # 18-3, Tr. Trial vol. 2, 55-57.  Korona drove around for a period of time but refused to remove the duct tape from J.K.'s wrists.  Dkt. # 18-3, Tr. Trial vol. 2, at 57-60.  J.K. ultimately removed the duct tape with her teeth, but Korona warned her that "there would be consequences" if she attempted to signal anyone for help.  Dkt. # 18-3, Tr. Trial vol. 2, at 57-58, 60.

At some point, Korona took J.K. and J.B.K. to a Burger King where he bought food and met with his drug dealer to buy oxycodone.  Dkt. # 18-3, Tr. Trial vol. 2, at 59-60.  Korona injected himself and J.K. with oxycodone.  Dkt. # 18-3, Tr. Trial vol. 2, at 59-60.  Sometime after they left

the Burger King, Korona stopped at J.K.'s father's house to pick up J.K.'s brother, Jared, so that Jared could retrieve his truck—the truck that Korona borrowed earlier that morning to drive to J.K.'s house.  Dkt. # 18-3, Tr. Trial vol. 2, at 60-63, 115-16, 153-55.  While Jared was in the Mountaineer, J.K. tried to use her eyes and to display "an attitude" to communicate to Jared that something was wrong, but she feared the consequences of doing anything further.  Dkt. # 18-3, Tr. Trial vol. 2, at 62-63, 115-16.  Jared observed that Korona and J.K. were arguing, but he did not perceive anything that made him concerned for J.K.'s safety.  Dkt. # 18-3, Tr. Trial vol. 2, at 157-58, 164-65.

After Korona dropped off Jared at J.K.'s house, Korona took J.K. and J.B.K. to a hotel in West Tulsa.  Dkt. # 18-3, Tr. Trial vol. 2, at 63-64.  While he was in the lobby checking in to the hotel, J.K. remained in the Mountaineer with J.B.K., and Korona stared at J.K. through the glass window.  Dkt. # 18-3, Tr. Trial vol. 2, at 64.  Inside the hotel room, Korona again injected J.K. with oxycodone.  Dkt. # 18-3, Tr. Trial vol. 2, at 65.  Korona then removed J.K.'s clothing and engaged in vaginal intercourse with her.  Dkt. # 18-3, Tr. Trial vol. 2, at 65-68.  J.K. remained passive and did not resist because she feared that Korona would become violent if he discovered she had no intent to salvage their relationship.  Dkt. # 18-3, Tr. Trial vol. 2, at 65-67.

The next morning, Korona planned to steal some scrap metal from his previous employer, Boyle Services, so he could get cash for the trip to New York.  Dkt. # 18-3, Tr. Trial vol. 2, at 68-69.  Korona took J.K. and J.B.K. with him to Boyle Services and briefly left them alone in the Mountaineer.  Dkt. # 18-3, Tr. Trial vol. 2, at 69.  J.K. found an old cell phone, plugged it in to a charger, and called 911, but she hung up after a few seconds when Korona came running back to the Mountaineer.  Dkt. # 18-3, Tr. Trial vol. 2, at 69-70, 74; Dkt. # 19 (State's Ex. 8, audio recording of 911 call).  Korona then drove to a gas station where he attempted to use a stolen gas card, but the

card did not work.  Dkt. # 18-3, Tr. Trial vol. 2, at 74.  Unable to get gas, Korona drove back to

Boyle Services so he could steal power tools and exchange them for cash at a pawn shop.  Dkt. #

18-3, Tr. Trial vol. 2, at 74-75.  J.K. again tried to call 911, but Korona returned to the Mountaineer

before the call connected.  Dkt. # 18-3, Tr. Trial vol. 2, at 74-75.  Korona planned to retrieve an

identification card from the home of J.K.'s father so that he could pawn the stolen tools, but before

he could execute that part of his plan, Korona received a text message or phone call from Jared

warning him that law enforcement officers were looking for him at J.K.'s father's house.  Dkt. # 18-

3, Tr. Trial vol. 2, at 75-76, 158.  Korona told J.K. that they "need[ed] to get out of Tulsa and lay

low because the cops [were] looking for [them]."  Dkt. # 18-3, Tr. Trial vol. 2, at 76.

Korona then drove to the Bass Pro Shop in Broken Arrow.  Dkt. # 18-3, Tr. Trial vol. 2, at

76-77.  After Korona parked the Mountaineer, Korona, J.K. and J.B.K went into the store.  Dkt. #

18-3, Tr. Trial vol. 2, at 76-77.  J.K. was "upset and angry because [Korona] had a protective order

on [her], too" so J.K. took Korona's phone from him and called her attorney, but her attorney did

not answer.  Dkt. # 18-3, Tr. Trial vol. 2, at 77, 124-25.  J.K., who was holding J.B.K, then refused

to leave the store with Korona and contacted a store manager who called the police.  Dkt. # 18-3,

Tr. Trial vol. 2, at 77-78, 173-74; Dkt. # 19 (State's Ex. 9, audio recording of 911 call from Bass

Pro).  Korona left the store, alone, before any law enforcement officers arrived.  Dkt. # 18-3, Tr.

Trial vol. 2, at 77, 83.

Later that same day, Jared met Korona in the parking lot of St. Francis Hospital, in Broken

Arrow, to drop off bags of Korona's clothing.  Dkt. # 18-3, Tr. Trial vol. 2, at 158-61.  Jared then

went with Korona to Cash America Pawn and saw Korona pawn a sander and nail gun.  Dkt. # 18-3,

Tr. Trial vol. 2, at 161.[7]  Korona told Jared he needed the cash to get back to New York.  Dkt. # 18-3, Tr. Trial vol. 2, at 161.  Korona ultimately was arrested in a casino parking lot in West Siloam Springs, Oklahoma.  Dkt. # 18-4, Tr. Trial vol. 3, at 31-33.  Before the arrest, the arresting officer saw Korona get into J.K.'s Mountaineer and heard him start the vehicle.  Dkt. # 18-4, Tr. Trial vol. 3, at 32-33.  Korona told the officer that the Mountaineer belonged to J.K., and that "he was about to go return it to her."  Dkt. # 18-4, Tr. Trial vol. 3, at 34.  Law enforcement officers found a wad of duct tape on Korona's person and a roll of duct tape in the Mountaineer.  Dkt. # 18-4, Tr. Trial vol. 3, at 14-15, 27-28.  Officers also found in the Mountaineer sacks containing groceries that J.K. bought before Korona attacked her at her home, and a receipt from Burger King.  Dkt. # 18-3, Tr. Trial vol. 2, at 48-49; Dkt. # 18-4, Tr. Trial vol. 3, at 15-18.

A sexual assault nurse examiner examined J.K. on February 8, 2014, and found injuries consistent with J.K.'s account of the events that occurred beginning on February 7, 2014.  Dkt. # 18-4, Tr. Trial vol. 3, at 57-82.  Specifically, the nurse found bruising and needle marks on J.K.'s skin and an abrasion on her genitalia that was consistent with forcible intercourse.  Dkt. # 18-4, Tr. Trial vol. 3, at 67-74, 76-80.

## II.    State court proceedings

Based on the foregoing events, the State of Oklahoma ("the state") charged Korona with several criminal offenses.  The case proceeded to trial in September 2015, and a Tulsa County jury convicted Korona of kidnapping J.K. (count one), kidnapping their minor son, J.B.K. (count two), first-degree rape (count three), domestic assault and battery by strangulation (count four), violation

---

[7]    At trial, a co-owner of Boyle Services identified Korona as a former employee, identified the nail gun as a tool that was stolen from Boyle Services and recovered from Cash Pawn America, and testified that he also discovered that gas cards ordinarily kept in company vehicles had been taken.  Dkt. # 18-3, Tr. Trial vol. 2, at 177-82.

of a protective order for having contact with J.K. (count six) and J.B.K. (count seven), larceny of a motor vehicle (count eight), and second-degree burglary (count nine) for breaking into J.K.'s house.  Dkt. # 17-5, Korona v. State, No. F-2015-938 (Okla. Crim. App. 2016) ("OCCA Op."), at 1; Dkt. # 18-4, Tr. Trial vol. 3, at 202-04.  The jury acquitted Korona on a second charge of domestic assault and battery by strangulation (count five).  Dkt. # 17-5, OCCA Op., at 1 n.1; Dkt. # 18-4, Tr. Trial vol. 3, at 203.  During the second stage of the trial, the jury was asked to determine whether counts six and seven were committed after prior convictions for the same offense and the jury found that Korona had two prior misdemeanor convictions of violating a protective order.  Dkt. # 18-4, Tr. Trial vol. 3, at 221-36.  During the third stage of the trial, the jury found, beyond a reasonable doubt, that Korona had two or more prior felony convictions and the jury affixed punishment at 30 years' imprisonment (count one), 30 years' imprisonment (count two), 35 years' imprisonment (count three), 20 years' imprisonment (count four), seven years' imprisonment (count six), 12 years' imprisonment (count seven), nine years' imprisonment (count eight), and 12 years' imprisonment (count nine).  Dkt. # 17-5, OCCA Op., at 1-2; Dkt. # 18-4, Tr. Trial vol. 3, at 253-72. The trial court sentenced Korona accordingly and ordered the sentences imposed as to counts one, two, four, six, seven, eight and nine to be served concurrently with each other and consecutively to the 35-year sentence imposed as to count three.  Dkt. # 17-5, OCCA Op., at 2.

Represented by appellate counsel, Korona filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"), raising seven claims.  Dkt. # 17-5, OCCA Op., at 2.  In an unpublished opinion filed November 28, 2016, the OCCA rejected each claim on the merits and affirmed Korona's convictions and sentences.  Dkt. # 17-5, OCCA Op., at 3-7.  Korona did not file a petition

for writ of certiorari in the United States Supreme Court ("Supreme Court"). Dkt. # 3, Am. Pet., at 3.

On September 5, 2017, Korona, proceeding pro se, filed an application for postconviction relief in the District Court of Tulsa County ("state district court"), asserting that he was denied his Sixth Amendment right to the effective assistance of appellate counsel based on appellate counsel's failure to raise five claims. Dkt. # 17-6, Appl., at 1-10. Korona filed a supplement to his application for postconviction relief on March 9, 2018, identifying additional facts to demonstrate appellate counsel's alleged ineffectiveness for failing to challenge the sufficiency of the evidence. Dkt. # 17-7, Suppl., at 1-2. The state district court denied Korona's application and supplemental application for postconviction relief in an order filed April 16, 2018. Dkt. # 17-8, Dist. Ct. Order, at 1, 11. The state district court concluded that Korona failed to establish that any of the claims omitted by appellate counsel had merit and thus failed to establish that he was deprived of his constitutional right to the effective assistance of appellate counsel. Dkt. # 17-8, Dist. Ct. Order, 5-10. Korona filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief in an order filed December 26, 2018. Dkt. # 17-9, Korona v. State, No. PC-2018-602 (Okla. Crim. App. 2018) ("OCCA Order"), at 1.

## III.   Federal court proceedings

Korona filed an amended petition for writ of habeas corpus on March 1, 2019, identifying four claims. On June 7, 2021, Korona filed a motion asking this Court to stay this habeas proceeding, presumably pursuant to Rhines v. Weber, 544 U.S. 269, 278 (2005), so that he may exhaust available state remedies as to a new claim, not raised in the amended petition, that, in light of McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), the state lacked jurisdiction over his criminal

prosecution. Dkt. # 31, Mot., at 1-2.[8] Nunn urges the Court to deny the motion, arguing that the circumstances of this case do not warrant a stay. Dkt. # 32, Resp. to Mot., at 3-9.

### DISCUSSION

I.     **Legal framework**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's consideration of Korona's amended petition for writ of habeas corpus and, to a lesser extent, his request for a stay. Because he is in custody under a state-court judgment, this Court may not grant Korona federal habeas relief unless he shows that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 and federal habeas jurisprudence limit this Court's ability to grant habeas relief to a state prisoner in several ways.

First, the AEDPA "prohibits federal courts from granting habeas relief to state prisoners who have not exhausted available state remedies," Ellis v. Raemisch, 872 F.3d 1064, 1076 (10th Cir. 2017), as required by 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Second, the judicially-created procedural-default doctrine, which has been described as "an important 'corollary' to the exhaustion requirement," may bar relief. Davila v. Davis, 137 S. Ct.

---

[8]     In McGirt, the Supreme Court relied on established precedent to determine that Congress did not disestablish the historical boundaries of the Muscogee (Creek) Nation Reservation, that the reservation thus remains "Indian country" as defined in 18 U.S.C. § 1151(a), and that, as a result, certain crimes committed by or against Native Americans within the boundaries of that reservation must be prosecuted in federal court. 140 S. Ct. 2462-68, 2479. Korona does not expressly mention McGirt in the motion to stay, but he asserts that he is attempting to exhaust a claim "that the Treaty between Muscogee Creek Nation and the United States excludes state criminal jurisdiction." Dkt. # 31, Mot., at 1.

2058, 2064 (2017) (quoting <u>Dretke v. Haley</u>, 541 U.S. 386, 392 (2004)).  Under that doctrine, "a

federal court may not review federal claims that were procedurally defaulted in state court—that is,

claims that the state court denied based on an adequate and independent state procedural rule."

<u>Davila</u>, 137 S. Ct. at 2064.  "A state court finding of procedural default is independent if it is

separate and distinct from federal law," and "is adequate if it is 'strictly or regularly followed' and

applied 'evenhandedly to all similar claims.'"  <u>Duvall v. Reynolds</u>, 139 F.3d 768, 796-97 (10th Cir.

1998) (quoting <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982)).  "In all cases in which a state prisoner

has defaulted his federal claims in state court pursuant to an independent and adequate state

procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate

cause for the default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

<u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).

Third, the "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits

in state court, unless one of the exceptions listed in § 2254(d) obtains."  <u>Premo v. Moore</u>, 562 U.S.

115, 121 (2011).  Thus, a federal court may not grant habeas relief on federal claims rejected by a

state court unless the petitioner first demonstrates that the state court's adjudication of his or her

federal claims "resulted in a decision that" either (1) "was contrary to, or involved an unreasonable

application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1),[9] or (2) "was based on an

unreasonable determination of the facts in light of the evidence presented in the [s]tate court

proceeding," <u>id.</u> § 2254(d)(2).  And a federal court must presume the correctness of the state court's

---

[9]     As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing
legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme
Court's] decisions as of the time of the relevant state-court decision."  <u>Lockyer v. Andrade</u>,
538 U.S. 63, 71-72 (2003) (quoting <u>Terry Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).

factual findings unless the petitioner rebuts that presumption "by clear and convincing evidence."
28 U.S.C. § 2254(e)(1).  These standards make it difficult, but not impossible, to obtain federal
habeas relief on "claims already rejected in state proceedings."  Harrington v. Richter, 562 U.S. 86,
102 (2011).

Fourth, in most cases, a state prisoner must file a federal habeas petition within one year of
the date his or her state-court judgment became final on the conclusion of direct review.  28 U.S.C.
§ 2244(d)(1); Gonzalez v. Thaler, 565 U.S. 134, 150 (2012).  That one-year limitation period is
tolled during the time that a properly filed application for postconviction relief or other collateral
review is pending in state court.  28 U.S.C. § 2244(d)(2).

Finally, even if the petitioner either satisfies § 2254(d)'s exacting standards or makes the
necessary showings to overcome the procedural default of a federal claim, the petitioner is not
necessarily entitled to habeas relief.  Rather, in these situations, the federal court must review the
petitioner's federal claims de novo.  See Jeremy Williams v. Trammell, 782 F.3d 1184, 1191 (10th
Cir. 2015) (noting de novo review applies to claims not adjudicated on the merits in state court);
Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014) (discussing de novo review of claims when
petitioner satisfies § 2254(d)'s standards).  If the federal court finds a constitutional error on de novo
review, it then "must assess the prejudicial impact of [the] constitutional error . . . under the
'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619 (1993)],
whether or not the state appellate court recognized the error and reviewed it for harmlessness under
the 'harmless beyond a reasonable doubt' standard set forth in Chapman[v. California], 386 U.S. 18
[(1967)]."  Fry v. Pliler, 551 U.S. 112, 121-22 (2007).

Before applying these standards to evaluate Korona's claims, the Court first must consider his request to stay this proceeding.

## II.     Motion to stay

Presumably relying on Rhines, Korona asks the Court to stay this habeas proceeding so that he may exhaust available state remedies as to a new claim that he did not raise in the amended petition, specifically, a McGirt claim.  Dkt. # 31, Mot., at 1.  Nunn opposes a stay for several reasons.  Dkt. # 32, Resp. to Mot., at 3-9.  For two reasons, the Court denies the motion.

First, it is not clear that Rhines has any application here.  In Rhines, the Supreme Court held that a federal court may grant a stay, and hold a habeas petition in abeyance, rather than dismissing the petition, when the petitioner has filed a "mixed petition," i.e., a petition asserting both exhausted and unexhausted claims, and seeks a stay to present the unexhausted claims in state court.  544 U.S. at 275-78; see also Doe v. Jones, 762 F.3d 1174, 1181 (10th Cir. 2014) (concluding that Rhines's stay-and-abeyance procedure may apply, in certain circumstances, when a petition asserts only unexhausted claims).  The Rhines Court cautioned that a stay should be granted only if (1) the petitioner shows "good cause for [the] failure to exhaust" the unexhausted claims, (2) the "unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  544 U.S. at 278.  Critically though, neither Rhines nor Doe contemplated the use of the stay-and-abeyance procedure when, as here, a petitioner asserts only exhausted claims in a petition and seeks a stay to exhaust available state remedies as to a new claim that is not asserted in the petition.  See Postelle v. Carpenter, 901 F.3d 1202, 1225 (10th Cir. 2018) (noting that Rhines's "approv[al] of the stay-and-abatement process for raised but unexhausted claims does not appear to apply to claims not yet raised at all").  For that reason alone,

the Court could deny Korona's request for a stay.  See id. at 1224-25 (concluding that district court acted "undisputably within its discretion" by "holding that it could not stay and abate habeas proceedings for exhaustion of a claim not yet before the [district] court").

Second, even assuming Rhines might apply, the Court agrees with Nunn that a stay is not warranted because, even assuming Korona exhausts available state remedies, it would be futile to amend the amended petition to add the newly-asserted McGirt claim as that claim is untimely and does not relate back to the claims asserted in the amended petition.  Korona filed a second application for postconviction relief in state district court on November 20, 2020, asserting the McGirt claim, and that application appears to be pending.  Dkt. # 32-1, at 1, 3; Dkt. # 32-2, at 42. Assuming that Korona does not obtain relief on that claim in state court,[10] he would need to file a motion in this Court seeking leave to amend his amended petition to include the newly-asserted McGirt claim.  Federal Rule of Civil Procedure 15 governs a party's request to amend a habeas petition.  See 28 U.S.C. § 2242 (providing habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); see also Mayle v. Felix, 545 U.S. 644, 655-65 (2005) (discussing application of Rule 15 in habeas context); Postelle, 901 F.3d at 1225 (same).  Because Nunn filed a response to the amended petition, Korona may not amend his amended petition without leave of court.  FED. R. CIV. P. 15(a)(2).  A "court should freely give leave" to amend pleadings "when justice so requires."  Id.  But a court may deny leave to amend for

---

[10]     The Court finds it reasonable to assume that Korona likely will not obtain relief in state court on his pending McGirt claim.  As further discussed below, Korona's conviction became final more than three years before the July 9, 2020, ruling in McGirt.  The OCCA has held that McGirt does not apply retroactively to convictions that were final before July 9, 2020.  State ex rel. Matloff v. Wallace, 497 P.3d 686, 689-94 (Okla. Crim. App. 2021), cert. denied sub nom. Parish v. Oklahoma, No. 21-467, 2022 WL 89297 (U.S. Jan. 10, 2022).

various reasons, including "futility of the amendment." Stafford v. Saffle, 34 F.3d 1557, 1560 (10th Cir. 1994) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, as Nunn contends, the futility of the amendment is obvious. As previously stated, the AEDPA ordinarily requires a state prisoner to file one federal habeas petition, presenting all federal claims challenging the constitutional validity of his or her state-court judgment, within one year of the date the judgment became final following the conclusion of direct review. 28 U.S.C. § 2244(d)(1)(A); Gonzalez, 565 U.S. at 150; Felix, 655-56. Applying § 2244(d)(1)(A), Korona's convictions became final on February 27, 2017, 90 days after the OCCA issued its decision regarding his direct appeal, when the time expired for Korona to file a petition for writ of certiorari in the Supreme Court. Gonzalez, 565 U.S. at 150. Korona's one-year limitation period commenced the next day, on February 28, 2017, and, absent statutory tolling, would have expired on February 28, 2018. Harris v Dinwiddie, 642 F.3d 902, 906 n.6 (10th Cir. 2011). However, because he filed an application for postconviction relief on September 5, 2017, the one-year limitation period was tolled until December 26, 2018, when the OCCA affirmed the denial of his application for postconviction relief. 28 U.S.C. § 2244(d)(2). At that point, Korona had 175 days remaining, or until June 19, 2019, to file a federal habeas petition. He filed the amended petition on March 1, 2019, and Nunn concedes that the claims asserted in the amended petition are timely under § 2244(d)(1)(A). But Korona's one-year limitation period continued to run after he filed the amended petition and thus expired on June 19, 2019. See Rhines, 544 U.S. at 274-75 ("[T]he filing of a petition for habeas corpus in federal court does not toll the statute of limitations."). Korona first raised the McGirt claim in state court in November 2020, when he filed his second application for postconviction relief. That application was filed too late to toll the already-expired one-year

14

limitation period.  See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations.").  This means that the newly-asserted McGirt claim is not timely under § 2244(d)(1)(A).  And Korona fails to show that any other provision of § 2244(d)(1) might provide him a later commencement date for his one-year limitation period as to the McGirt claim.  See 28 U.S.C. § 2244(d)(1)(B)-(D) (providing alternative dates that trigger commencement of the AEDPA's one-year limitation period).

Further, because Rule 15's relation-back principle works differently in habeas proceedings, Korona cannot rely on that principle to include his McGirt claim in the timely-filed amended petition.  Generally, an amendment to a pleading can relate back to the original filing date if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  FED. R. CIV. P. 15(c)(1)(B).  But, as just discussed, the AEDPA imposes strict time limits on filing a federal habeas petition and ordinarily requires a state prisoner to present all federal claims challenging the constitutional validity of his or her state-court judgment within one complete petition.  28 U.S.C. § 2244(d)(1)(A); Felix, 545 U.S. at 648, 654-56; see also 28 U.S.C. § 2244(b) (providing limited circumstances for state prisoner to file second or successive habeas petition under § 2254).  As a result, "[a]n amended habeas petition . . . does not relate back (and, thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  Felix, 545 U.S. at 650.  That the new ground for relief is related to the petitioner's trial and conviction is not sufficient to satisfy the relation-back principle.  Id.  Rather, "relation back depends on the existence of a common 'core of operative facts' uniting the original

and newly asserted claims." Id. at 659; see also Postelle, 901 F.3d at 1225 (noting that because "federal habeas law strictly limits the circumstances under which an amendment can relate back to the original petition filing," a proposed amendment can relate back "'*if and only if* . . . the proposed amendment does not seek to add a new claim or to insert a new theory into the case.'" (emphasis in original) (quoting United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000))). Here, Korona's proposed amendment seeks to add a new McGirt claim that shares no facts in common with the four claims he identifies in his amended petition and asserts a new theory to support his collateral attack on his state-court judgment.[11] Thus, Korona cannot rely on the relation-back principle to add the new McGirt claim to the amended petition.

For these reasons, the Court denies the motion to stay and will consider only those claims asserted in the amended petition.

## III.  Amended petition

Korona raises four claims.  First, he asserts that five separate trial errors, and the cumulative effect of those errors, deprived him of his constitutional right to a fair trial.  Dkt. # 3, Am. Pet., 19. Second, he asserts that his convictions for violation of a protective order and second-degree burglary violate "double punishment provisions of the United States Constitution."  Dkt. # 3, Am. Pet., at 19. Third, he asserts that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel.  Dkt. # 3, Am. Pet., at 19.  Fourth, he asserts that he was deprived of his Sixth Amendment right to the effective assistance of appellate counsel.  Dkt. # 3, Am. Pet., at 19-20.

---

[11]    As more fully described below, the claims asserted in the amended petition allege multiple trial errors deprived Korona of a fair trial, two of his convictions violate the prohibition against double punishment for the same crime, and that he was denied his right to the effective assistance of trial counsel and appellate counsel.

Nunn concedes that these claims are timely and that Korona exhausted available state remedies as to each claim raised therein, with the exception of two sub-claims asserted in claim one. Dkt. # 17, Resp. to Pet., at 2.  Nunn contends, however, that Korona is not entitled to federal habeas relief because the procedural-default doctrine bars relief as to those parts of claim one that are unexhausted and because 28 U.S.C. § 2254(d) bars relief as to all claims that the OCCA adjudicated on the merits.  Dkt. # 17, Resp. to Pet., at 7-68.

A.      **Claim one:  Multiple trial errors deprived Korona of a fair trial.**

Korona first claims that the individual and cumulative effect of five trial errors deprived him of his constitutional rights to due process and a fair trial.  Dkt. # 3, Am. Pet., at 19.  Claim one thus consists of six sub-claims:

(a) The trial court deprived Korona of a fair trial when it read to the jury a portion of the information that charged him with committing one count of violating a protective order as a "subsequent offense."

(b) The prosecutor deprived Korona of a fair trial during closing argument by shifting the burden of proof and invoking societal alarm.

(c) The trial court deprived Korona of a fair trial when it failed to properly instruct the jury regarding the limited purposes for which the jury could consider other-crimes evidence that was admitted at trial.

(d) The trial court deprived Korona of a fair trial when it erroneously admitted a portion of the protective order that referenced Korona's prison time, drug use, and gang ties.

(e) The trial court deprived Korona of a fair trial when it incorrectly instructed the jury on the range of punishment as to count four.

(f) The cumulative effect of the errors alleged in sub-claims (a)-(e) deprived Korona of a fair trial.

Dkt. # 3, Am. Pet., at 19.[12]

### 1.    Trial court's reference to a prior conviction

Korona argues that the trial court deprived him of his constitutional right to a fair trial by reading to prospective jurors a portion of the charging document that referred to Korona's prior conviction of violating a protective order.  At the beginning of voir dire, the trial court read a portion of the charging document reflecting that Korona was charged, in part, with "Count 6, violation of a protective order, subsequent offense."  Dkt. # 17-2, Appellant Br., at 9-10 (quoting Dkt. # 18-2, Tr. Trial vol. 1, at 12-13).  Immediately after the trial court's reference to a "subsequent offense," and outside the hearing of the prospective jurors, the prosecutor notified the trial court that it was improper to read that portion of the charging document, and defense counsel moved for a mistrial. Dkt. # 18-2, Tr. Trial vol. 1, at 13.  The trial court denied the motion for a mistrial and read the remainder of the charging document.  Dkt. # 18-2, Tr. Trial vol. 1, at 13-14.  Korona argued on direct appeal that the trial court's error was "particularly prejudicial" and required reversal in light of prior state court decisions, and that the trial court abused its discretion by denying his motion for a mistrial.  Dkt. # 17-2, Appellant Br., at 9-11.  Applying state law, the OCCA agreed that the trial court erred in mentioning Korona's prior conviction.  Dkt. # 17-5, OCCA Op., at 3.  But the OCCA found the error harmless, reasoning that "[t]he mention of the 'subsequent offense' was fleeting, and the evidence of [Korona's] commission of" the charged offense "was overwhelming."  Dkt. # 17-5, OCCA Op., at 3.

---

[12]    Korona lists these sub-claims in the amended petition without any supporting arguments. Because he appears pro se, the Court liberally construes the amended petition as incorporating the same arguments Korona presented to the OCCA.

Nunn contends that claim one, sub-claim (a) is unexhausted because Korona's appellate argument alleged only a state-law error and did not fairly present the alleged error as the federal claim he asserts here, namely, that the trial court's brief reference to his prior conviction during voir dire violated his constitutional rights to a fair trial and due process of law.  Dkt. # 17, Resp. to Pet., at 9-10.  The Court agrees.  See Duncan v. Henry, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); Grant v. Royal, 886 F.3d 874, 890 (10th Cir. 2018) (explaining that in determining whether a petitioner fairly presented a federal claim in state court, "the crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." (quoting Prendergast v. Clements, 699 F.3d 1182, 1184 (10th Cir. 2012))).

Nunn further contends that claim one, sub-claim (a) is subject to an anticipatory procedural bar, and should be deemed procedurally defaulted, because the OCCA would not now consider a federal claim based on the allegedly erroneous reference to Korona's prior conviction if Korona were to return to state court and raise that claim in a successive application for postconviction relief. Dkt. # 17, Resp. to Pet., at 11-13.  Again, the Court agrees.  See Grant, 886 F.3d at 890-92, 901 (discussing exhaustion, anticipatory procedural bar, and procedural default and recognizing that Oklahoma courts generally decline to consider in postconviction proceedings those claims that were or could have been raised on direct appeal).

Korona responds to Nunn's procedural-default argument by asserting that he referred to state court decisions in his state appellate brief that "were decided on constitutional law principles" and

that those references were sufficient to apprise the OCCA of the federal nature of his claim.  Dkt.

# 24, Reply Br., at 1.  Applying <u>Duncan</u> and <u>Grant</u>, the Court disagrees.  Because Korona fails to

demonstrate any basis to excuse his failure to exhaust the federal due-process claim for which he

now seeks federal habeas review, the Court denies the amended petition as to claim one, sub-claim

(a).

### 2.      Prosecutorial misconduct

Next, Korona argues that prosecutorial misconduct during closing argument deprived him

of a fair trial.  Korona fairly presented claim one, sub-claim (b) on direct appeal.  First, he argued

that the prosecutor impermissibly attempted to shift the burden of proof by stating, "Ladies and

gentleman, the Defendant's also been charged with the crime of spousal rape.  Well, I don't think

there's any dispute.  I haven't heard any contrary evidence that they had sex."  Dkt. # 17-2,

Appellant Br., at 13; Dkt. # 18-4, Tr. Trial vol. 3, at 162.  Trial counsel timely objected to this

remark, and the trial court sustained the objection.  Dkt. # 18-4, Tr. Trial vol. 3, at 162.  Second,

Korona argued that the prosecutor "evoked societal alarm when she inferred that an acquittal would

deter victims from reporting crimes" by stating, "Every time we turn around, they try to make [J.K.]

the bad guy.  That's why people don't report rape.  That's why people don't report domestic

violence."  Dkt. # 17-2, Appellant Br., at 14; Dkt. # 18-4, Tr. Trial vol. 3, at 191.  Trial counsel

objected to this remark at trial, and the trial court sustained the objection but did not admonish the

jury to disregard the prosecutor's comments.  Dkt. # 18-4, Tr. Trial vol. 3, at 191.  The OCCA

rejected Korona's prosecutorial-misconduct claim, stating:

> We evaluate such claims within the context of the entire trial, considering the
> prosecutor's actions, the strength of evidence, and corresponding defense arguments.
> We remedy such misconduct only where grossly improper argument renders the trial

fundamentally unfair.  Defense objections to the comments challenged here were sustained, curing any error.  The comments did not deny a fair and impartial trial.

Dkt. # 17-5, OCCA Op., at 4 (internal citations omitted).

Nunn contends, and the Court agrees, that § 2254(d) bars relief as to claim one, sub-claim (b).  Under clearly established federal law, prosecutorial comments violate a defendant's right to a fair trial only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)).  Even when a prosecutor makes improper remarks, they take on constitutional dimension only if they are "so egregious as to constitute a miscarriage of justice." United States v. Hernandez-Muniz, 170 F.3d 1007, 1012 (10th Cir. 1999); see also Hooper v. Mullin, 314 F.3d 1162, 1172 (10th Cir. 2002) (explaining that when "challenged remarks do not implicate a specific constitutional right, [a] [p]etitioner is entitled to habeas relief only if he can establish that the prosecutor's argument, viewed in light of the trial as a whole, resulted in a fundamentally unfair proceeding").  Because the OCCA applied these legal principles when it rejected Korona's prosecutorial-misconduct claim by considering the effect of the prosecutor's comments in light of the evidence presented at trial, Korona cannot show that the OCCA's decision as to this claim is contrary to clearly established Supreme Court precedent.  Korona appears to assert that he can make this showing because the OCCA failed to cite controlling Supreme Court decisions, including DeChristoforo. Dkt. # 24, Reply Br., at 2.  But that argument lacks merit.  See Early v. Packer, 537 U.S. 3, 8 (2002) (noting that the AEDPA does not require state courts considering federal claims to cite, or even be aware of, Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them).  In any event, this Court too has considered the challenged comments in light of the trial as a whole and finds nothing objectively

unreasonable about the OCCA's determination that the prosecutor's remarks were not so grossly prejudicial as to deprive Korona of a fair trial.  The Court therefore denies the amended petition as to claim one, sub-claim (b).

### 3.    Erroneous jury instructions

Korona next contends that two jury-instruction errors deprived him of a fair trial.  First, in claim one, sub-claim (c), he argues that the trial court deprived him of a fair trial by failing to give a narrowly-tailored limiting instruction regarding other-crimes evidence that was admitted at trial. Second, in claim one, sub-claim (e), he argues that the trial court deprived him of a fair trial by giving an instruction that incorrectly stated the range of punishment as to count four.

Korona raised both alleged errors on direct appeal.  There, he argued that after admitting other-crimes evidence—namely, evidence that Korona abused and threatened to kill J.K., on at least three prior occasions—the trial court failed to properly instruct the jury that it could consider this evidence only for the limited purposes of showing a common scheme or intent.  Dkt. # 17-2, Appellant Br., at 15-17.  These were the two purposes identified by the state at a pretrial hearing for admitting this other-crimes evidence. Dkt. # 18-1, Tr. Mot. Hr'g, at 2-3.  But the trial court, without objection, broadly instructed the jury that it could consider this evidence "on the issue of the defendant's alleged motive, opportunity, intent, preparation, common scheme or plan, or knowledge."  Dkt. # 18-8, O.R. vol. 2, at 188.  Korona separately argued that the trial court erroneously instructed the jury that the range of punishment, as to count four, was imprisonment for nine years to life rather than three years to life.  Dkt. # 17-2, Appellant Br., at 19-20.  Korona conceded on direct appeal that he did not challenge either instruction at trial and that both alleged errors were subject to plain-error review, but he argued that the first error deprived him of a fair trial

and that the second error required a remand for resentencing based on state law.  Dkt. # 17-2, Appellant Br., at 15-17, 19-20.

The OCCA found "no plain or obvious error" as to "the trial court's failure to give proper contemporaneous and final limiting instructions on other crimes evidence." Dkt. # 17-5, OCCA Op., at 5.  The OCCA reasoned that "[s]uch limiting instructions are generally not required without a timely request from counsel," that "the other crimes evidence here was admitted for proper purposes," and that "the trial court's final instructions were sufficient to prevent the jury's misuse of [the other crimes evidence] in arriving at its verdicts."  Dkt. # 17-5, OCCA Op., at 5.  As to the range-of-punishment instruction, the OCCA accepted the state's concession that the instruction was incorrect, but the OCCA denied relief, stating, "We are firmly convinced, from the aggravated facts of this case, that the jury's sentence of twenty (20) years['] imprisonment on Count 4 was not seriously affected by the incorrect minimum sentence given in the instruction." Dkt. # 17-5, OCCA Op., at 6.

The Court agrees with Nunn that § 2254(d) bars relief as to claim one, sub-claims (c) and (e).  Under clearly established federal law, claims alleging that the trial court erroneously instructed the jury ordinarily implicate state law and are not cognizable federal habeas claims unless the alleged errors were "so fundamentally unfair as to deprive [the] petitioner of a fair trial and due process of law."  Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005).  By applying its plain-error standard to reject Korona's challenges to the jury instructions that were given, the OCCA determined that the overly broad limiting instruction and the incorrect range-of-punishment instruction did not deprive Korona of due process or a fair trial.  See Thornburg v. Mullin, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (noting that when the OCCA reviews a claim under its plain-error

23

standard, it effectively applies the same test that federal courts apply to assess an alleged due-process violation).  Thus, the Court rejects Korona's argument that the OCCA's decision is contrary to clearly established federal law.  See Dkt. # 24, Reply Br., at 2 (asserting that the OCCA failed to apply proper Supreme Court precedent).  As a result, the only question under § 2254(d)(1) is whether the OCCA unreasonably applied the federal due-process test, Thornburg, 422 F.3d at 1125, and the question under § 2254(d)(2) is whether the OCCA unreasonably determined the facts relevant to Korona's claims in light of the evidence presented in state court.  Korona presents no discernible arguments addressing either of these questions and thus fails to meet his "heavy burden" to show that he is entitled to federal habeas relief based on the alleged jury-instruction errors.  See Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) ("A § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction.").  The Court therefore denies the amended petition as to claim one, sub-claims (c) and (e).

### 4.    Admission of other-crimes evidence

In claim one, sub-claim (d), Korona alleges that the trial court deprived him of a fair trial when it admitted prejudicial evidence of other crimes or bad acts.  As he did on direct appeal, Korona argues that the trial court erred, and violated his right to a fair trial, by admitting, without redaction, a copy of a petition for a protective order (State's Ex. 2), a portion of which referenced Korona's prior time in prison, drug use, and gang ties.  Dkt. # 17-2, Appellant Br., at 17; Dkt. # 18-5, Trial Exs., at 3-9.  In part, the petition contained J.K.'s handwritten statement alleging: "[D]efendant has a history of multiple arrests and got released off parole recently. [D]efendant is currently injecting steroids.  He has extreme anger problems. [He is] emotionally /verbally abusive - physically abusive on 11-30-12 threatened to have gang members come down from N.Y. and 'take

24

care of us.'"  Dkt. # 18-5, Trial Exs., at 5-6.  The petition for a protective order and the resulting

protective order (State's Ex. 3) were admitted at trial, without objection, after J.K. testified that she

filed the petition for a protective order "because [Korona] threatened to kill [her], and then he

threatened to kill [her] and [her] whole family."  Dkt. # 18-2, Tr. Trial vol. 1, at 5-6; Dkt. # 18-3,

Tr. Trial vol. 2, at 38-39; Dkt. # 18-5, Trial Exs., at 10-13.  J.K. further testified that Korona "had

become very aggressive towards [her]," that he "threatened to assassinate [her] attorney," and that

he "pulled [her] around by [her] hair real violently."  Dkt. # 18-3, Tr. Trial vol. 2, at 39.  Relying

on state law, Korona argued on direct appeal that evidence regarding Korona's prior time in prison,

drug use and gang ties was not relevant to the charges against him and, even if relevant, should have

been excluded as more prejudicial than probative.  Dkt. # 17-2, Appellant Br., at 17-19.  Applying

its plain-error standard, the OCCA found

> that the victim's petition for protective order and the order itself were relevant to
> show Appellant's motive and intent, as well as the general sequence of events.  The
> victim's extrajudicial statements about Appellant's past acts were not admitted to
> prove the truth of the matters asserted, and were not as prejudicial to Appellant as the
> direct evidence against him in the current case.  Because any error had no effect on
> the outcome of the trial, no relief is warranted.

Dkt. # 17-5, OCCA Op., at 5.

Nunn contends that because claim one, sub-claim (d) alleges only a state-law evidentiary

error, it is not a cognizable habeas claim.  Dkt. # 17, Resp. to Pet., at 25-31.  However, as Nunn

acknowledges, habeas relief may be available "if an alleged state-law error 'was so grossly

prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of

due process.'"  Hooks v. Workman, 689 F.3d 1148, 1180 (10th Cir. 2012) (quoting Revilla v.

Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002)).  In applying the fundamental-fairness analysis, a

reviewing court must consider the allegedly erroneous admission of evidence in light of the record

as a whole.  Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002).  Because that is precisely

the analysis that the OCCA engaged in by reviewing the trial court's evidentiary ruling for plain

error, Korona must demonstrate either that the OCCA unreasonably applied the fundamental-

fairness analysis, Thornburg, 422 F.3d at 1125, or that the OCCA unreasonably determined the facts

underlying his challenge to the evidentiary ruling, 28 U.S.C. 2254(d)(2).  As Nunn, argues, Korona

fails to establish either proposition.  Having reviewed the trial transcripts and exhibits, the Court

concludes that the OCCA neither misstated nor misapprehended the facts regarding the evidence that

was allegedly admitted in error, and that the OCCA reasonably determined, in light of the entire

trial, that "any error" in admitting the challenged portions of the petition for protective order "had

no effect on the outcome of the trial."  Dkt. # 17-5, OCCA Op., at 5.  The Court therefore denies the

amended petition as to claim one, sub-claim (d).

### 5.    Cumulative effect of trial errors

Korona's final contention, in claim one, sub-claim (f), is that the cumulative effect of the

errors alleged in claim one, sub-claims (a)-(e) deprived him of a fair trial and due process of law.

Dkt. # 3, Am. Pet., at 19.  As Nunn contends, Korona did not fairly present a cumulative-error claim

in state court, either through his direct or postconviction appeal.  Dkt. # 17, Resp. to Pet., at 10-11.

As a result, the Court finds that claim one, sub-claim (f) is procedurally defaulted and subject to an

anticipatory procedural bar.  See Grant, 886 F.3d at 892 (discussing anticipatory procedural bar and

procedural default); Gonzales v. McKune, 279 F.3d 922, 925 (10th Cir. 2002) (rejecting habeas

petitioner's argument that asserting in state court two separate claims, one under Strickland v.

Washington, 466 U.S. 668 (1984), and one under Brady v. Maryland, 373 U.S. 83 (1963), was

sufficient to "exhaust the issue of Strickland-Brady cumulation" and thus finding the petitioner's

cumulative-error argument was procedurally defaulted); see also Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 542-43 (3d Cir. 2014) (joining several other courts in holding "that a claim of cumulative error must be presented to the state courts before it may provide a basis for habeas relief").

In response to Nunn's argument that the cumulative-error claim is procedurally defaulted, Korona concedes that he "did not explicitly state a proposition in his direct appeal regarding cumulative error." Dkt. # 24, Reply Br., at 1-2. But he asserts that "certainly, [his] proposition of ineffective assistance of appellate counsel encompasses such a claim." Dkt. # 24, Reply Br., at 1. The Court disagrees. Put simply, an ineffective-assistance-of-appellate-counsel claim alleging that counsel performed deficiently and prejudicially in presenting, or failing to present, certain claims on direct appeal is not the substantial equivalent of a cumulative-error claim alleging that multiple trial errors, considered collectively, deprived a defendant of a fair trial. Thus, presenting the former claim in state court does not exhaust available state remedies as to the latter claim. Because Korona procedurally defaulted the cumulative-error claim and fails to make the showings necessary to overcome the procedural default of that claim, the Court denies the amended petition as to claim one, sub-claim (f).

**B.    Claim two: Korona's convictions violate the Double Jeopardy Clause.**

Next, Korona claims that his convictions for violation of a protective order and second-degree burglary violate his Fifth Amendment right to be free from double jeopardy. He argues that he was convicted of two counts of violating a protective order by going to J.K.'s home after the protective order had been served and that he was also convicted of second-degree burglary for entering J.K.'s home with the intent to commit a felony. Dkt. # 3, Am. Pet., at 19. Thus, he argues,

27

his convictions violate the prohibition against double jeopardy because the "single act of [him] going to [the] victim's home supports both crimes." Dkt. # 3, Am. Pet., at 19.  Korona raised this claim on direct appeal, Dkt. # 17-2, Appellant's Br., at 11-13, and the OCCA rejected it.   Citing Blockburger v. United States, 284 U.S. 299, 304 (1932), the OCCA reasoned that the convictions do not "punish the same offense twice in violation of double jeopardy, as each of these crimes contains one or more factual elements that the others do not." Dkt. # 17-5, OCCA Op., at 3-4.

The Court agrees with Nunn that § 2254(d) bars relief as to claim two.  As relevant here, the Fifth Amendment's double-jeopardy clause, applicable to the states through the Fourteenth Amendment, protects an individual against multiple punishments for the same offense.   North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 795 (1989).  As the OCCA recognized, Blockburger is the Supreme Court precedent governing Korona's claim that he has been impermissibly punished twice for a single offense.  In Blockburger, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304.  "In other words, Blockburger's so-called 'same-elements test . . . inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.'" United States v. Mier-Garces, 967 F.3d 1003, 1012 (10th Cir. 2020) (quoting United States v. Dixon, 509 U.S. 688, 696 (1993)), cert. denied, 141 S. Ct. 1431 (2021).  Critically, "[t]he double jeopardy test does not focus on the acts charged in the indictment or the evidence at trial, but rather on the elements of the crimes." United States v. Davis, 793 F.2d 246, 248 (10th Cir. 1986).  Because the OCCA applied

28

<u>Blockburger</u>, Korona cannot show that the OCCA's adjudication of his claim resulted in a decision that is contrary to clearly established federal law.

Further, because his arguments in support of the double-jeopardy claim focus on his conduct, rather than on the elements of the offenses, Korona fails to show how the OCCA's elements-focused analysis unreasonably applied <u>Blockburger</u> or that the OCCA's decision rests on an unreasonable determination of the facts presented in state court.  A comparison of the elements of each offense shows that they are not the same.  The elements of the offense of violating a protective order required the state to prove that Korona (1) willfully (2) violated a protective order (3) that had been served on him. Dkt. # 18-8, O.R. vol. 2, at 40; <u>see also</u> OKLA. STAT. tit. 22, § 60.6 (2011).  To prove that Korona committed the crime of second-degree burglary, the state had to show the following elements: (1) breaking, (2) entering, (3) a building, (4) of another, (5) in which property is kept, (6) with the intent to commit any felony.  Dkt. # 18-8, O.R. vol. 2, at 45; <u>see</u> <u>also</u> OKLA. STAT. tit. 21, § 1435 (2011).  Because no fairminded jurists would disagree with the OCCA's rejection of Korona's double-jeopardy claim, the Court denies the amended petition as to claim two.

### C.      Claim three:  Trial counsel was ineffective.

In his third claim, Korona alleges that trial counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to the effective assistance of counsel.  He faults trial counsel for failing to object to (1) the admission of State's Exhibit 2, the petition for a protective order that referenced Korona's prior time in prison, drug use, and gang ties, (2) the overly broad limiting instruction regarding other-crimes evidence, and (3) the jury instruction that incorrectly stated the sentencing range for the crime charged in count four.  Dkt. # 3, Am. Pet., at 19.  Korona raised this same claim on direct appeal, Dkt. # 17-2, Appellant's Br., at 20-22, and the OCCA

rejected it.   Applying Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a defendant to show deficient performance and resulting prejudice, the OCCA concluded that Korona "has not shown a constitutional violation of the right to counsel."   Dkt. # 17-5, OCCA Op., at 6-7.

Nunn contends that § 2254(d) bars relief as to this claim, and the Court agrees.   To establish a Sixth Amendment violation, a defendant must show deficient performance and resulting prejudice. Strickland, 466 U.S. at 687.   A reviewing court's "scrutiny of counsel's performance must be highly deferential," and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   Strickland, 466 U.S. at 689.   Even if counsel's performance is shown to be unreasonable under this deferential standard, Strickland requires the defendant to show prejudice, i.e., to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   466 U.S. at 694.   When a state court adjudicates the merits of a Strickland claim, "[t]he pivotal question" on habeas review "is whether the state court's application of the Strickland standard was unreasonable."   Richter, 562 U.S. at 101.   This is so because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

The OCCA's analysis of the Sixth Amendment claim is concise.   Nonetheless, in the context of the OCCA's entire decision, it was objectively reasonable for the OCCA to conclude that Korona failed to establish a Sixth Amendment violation.   Before considering Korona's ineffective-assistance-of-trial-counsel claim, the OCCA considered each of the alleged trial errors that, in Korona's view, warranted an objection from trial counsel.   The OCCA found no error in the

admission of the unredacted petition for a protective order, no error in the use of an overly broad limiting instruction regarding other-crimes evidence, and no prejudicial error as to the instruction that incorrectly stated the range of punishment as to count four.  Dkt. # 17-5, OCCA Op., at 5-6. Based on these determinations, it was objectively reasonable for the OCCA to determine that trial counsel did not perform deficiently by failing to object to the admission of the petition for protective order or the overly broad limiting instruction.  See Jeremy Williams, 782 F.3d at 1198 ("[W]hen a defendant fails to show that a trial court's admission of evidence was improper for some reason, it likely follows that the lawyer did not perform deficiently by failing to object to its admission."). Further, a reasonable argument could be made that even if the OCCA found that counsel should have objected to the incorrect range-of-punishment instruction, the OCCA nonetheless could have concluded that counsel's failure to do so did not result in prejudice.  See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").  On the record presented, Korona cannot show that the OCCA unreasonably applied Strickland to reject his claim that trial counsel failed to provide constitutionally adequate representation.  As a result, § 2254(d) bars relief and the Court denies the amended petition as to claim three.

**D.    Claim four:  Appellate counsel was ineffective.**

In his fourth claim, Korona contends that appellate counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to the effective assistance of counsel, by failing to argue (1) that the evidence is insufficient to support his convictions of kidnapping, rape, second-degree burglary and larceny of an automobile because the jury heard some evidence that either contradicted J.K.'s version of the events or made her version less credible, (2) that the

evidence is insufficient to support his convictions of violating a protective order because the evidence shows that "any violation of [a] protective order was suborned by [J.K.] and therefore not 'willful' on [Korona's] part," (3) that the trial court "lacked jurisdiction" to sentence him under Oklahoma's habitual-offender statute, OKLA. STAT. tit. 21, § 51.1, because that statute is unconstitutionally arbitrary given that some recidivists do not receive harsher sentences than first-time offenders and because it permits a jury to focus on a defendant's past record, (4) that Korona was deprived of due process when the trial court applied Oklahoma's 85% sentencing rule to his rape conviction because OKLA. STAT. tit. 21, §§ 12.1 and 13.1 are unconstitutionally vague, and (5) that trial counsel was ineffective for failing to present at trial testimony from five witnesses and certain evidence, namely, emails and text messages between Korona and J.K., and DNA/fingerprint evidence.  Dkt. # 3, Am. Pet., at 19-20; Dkt. # 17-6, Appl., at 2-10.

Korona presented a nearly identical claim to the OCCA through his postconviction appeal,[13] and the OCCA rejected it, stating, "Having reviewed the District Court's order, we find the disposition it makes of [Korona's] claims is supported by the law and the post-conviction appeal record, and that its denial of post-conviction relief should be affirmed for the reasons expressed in that order."  Dkt. # 17-9, OCCA Order, at 3-4.  Because the OCCA expressly adopted the state district court's findings and conclusions, the state district court's reasoning necessarily informs this Court's analysis of claim four.  See Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018) (noting that application of § 2254(d) "requires the federal habeas court to 'train its attention on the particular

---

[13]    In his application for postconviction relief, Korona asserted that appellate counsel was ineffective for failing to raise a sixth issue:  that Korona was denied due process because the jury's guilty verdict as to count four was inconsistent with the jury's not guilty verdict as to count five.  Dkt. # 17-6, Appl., at 4.  Because Korona does not reassert this sixth allegation in his amended petition to support claim four, the Court does not address it.

32

reasons—both legal and factual—why state courts rejected a state prisoner's federal claims,'" and holding that when highest appellate court does not explain its reasoning "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" (quoting Hittson v. Chatman, 576 U.S. 1028, 135 S. Ct. 2126, 2126 (2015) (Ginsburg J., concurring in denial of certiorari)); Hawes v. Pacheco, 7 F.4th 1252, 1261 n.6 (10th Cir. 2021) (discussing "look-through rule").

The state district court applied Strickland and Logan v. State, 293 P.3d 969 (Okla. Crim. App. 2013), to evaluate Korona's ineffective-assistance-of-appellate-counsel claim and thoroughly examined the merits of all but one issue that Korona identified as improperly omitted from his direct appeal. Dkt. # 17-8, Dist. Ct. Order, at 5-10. The state district court reasoned that Korona's first two issues challenging the sufficiency of the evidence lacked merit because the evidence, viewed in the light most favorable to the state, amply supported each of his convictions. Dkt. # 17-8, Dist. Ct. Order, at 7-8. The state district court reasoned that Korona's constitutional challenge to OKLA. STAT. tit. 21, § 51.1 lacked merit because the plain language of the statute authorizes, but does not mandate, harsher punishments for repeat offenders. Dkt. # 17-8, Dist. Ct. Order, at 9. The state district court further reasoned that Korona's argument that this statute improperly focuses on an offender's past record lacked merit because the statute does not permit a jury to consider imposing a lengthier sentence for a current offense based on prior convictions unless the jury first has determined (1) that the defendant is guilty of the current charged offense and (2) the state has proven the existence of the defendant's prior conviction or convictions. Dkt. # 17-8, Dist. Ct. Order, at 9. As to the fourth issue, the state district court reasoned that Korona's claim that OKLA. STAT. tit. 21, §§ 12.1 and 13.1 are unconstitutionally vague lacked merit because Korona's sole argument to

33

support that claim mistakenly relied "on interpretations of the preceding statutes by the Governor

of Oklahoma and the Oklahoma Department of Corrections previous interpretation of the statute"

and those interpretations "as to when earned credits accrue [are] irrelevant as the service of 85% of

the sentence is mandatory."  Dkt. # 17-8, Dist. Ct. Order, at 10.  Because the state district court

found that each of these claims lacked merit, it concluded that appellate counsel did not perform

deficiently by omitting them.  Dkt. # 17-8, Dist. Ct. Order, at 7-10.  As to appellate counsel's

allegedly deficient failure to argue that trial counsel was ineffective for failing to present certain

witnesses and evidence, the state district court stated,

> [T]he Petitioner does not present an affidavit from any of the individuals he identifies
> as witnesses, nor does he provide the [c]ourt with copies of any emails or text
> messages.  Thus, Petitioner's claims in his sixth ground for relief is self-serving and
> would require the court speculate as to what evidence may in actuality be presented.

Dkt. # 17-8, Dist. Ct. Order, at 10.  In other words, the state district court found that Korona failed

to develop a record sufficient for the state district court to determine whether the omitted issue

regarding trial counsel's alleged ineffectiveness had merit and thus failed to demonstrate that this

issue should have been raised on direct appeal.

Nunn aptly argues that § 2254(d) bars relief as to claim four.  The Sixth Amendment right

to the effective assistance of counsel extends to a criminal defendant's first appeal as of right.  See

Evitts v. Lucey, 469 U.S. 387, 396 (1985) ("A first appeal as of right therefore is not adjudicated

in accord with due process of law if the appellant does not have the effective assistance of an

attorney.").  Similarly, Strickland's deferential standard for evaluating whether counsel provided

constitutionally adequate representation extends to a criminal defendant's claim that appellate

counsel was ineffective.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  In this context, the defendant

must show (1) "that a reasonably competent attorney" would have determined that the omitted

"nonfrivolous issue was clearly stronger than issues that counsel did present," and (2) "a reasonable probability that, but for his counsel's unreasonable failure" to raise the omitted issue or issues, the defendant "would have prevailed on his appeal." Id. at 285-89.  When applying Strickland to consider whether appellate counsel performed deficiently by omitting certain issues, reviewing courts necessarily must "look to the merits of" the omitted issue or issues.  Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)). This is so because "ineffective appellate assistance can be established on the basis of the demonstrable merit of the issue omitted by counsel on the petitioner's direct appeal." Cargle, 317 F.3d at 1205.  But, "[i]f the issue is meritless, its omission will not constitute deficient performance." Id. at 1202.

Because the state district court applied Strickland and examined the merits of all but one of the issues Korona identified as unreasonably omitted by appellate counsel, Korona cannot show that the state district court's decision as to his ineffective-assistance-of-appellate-counsel claim, or the OCCA's decision adopting the state court's decision, is contrary to clearly established federal law. And, on careful consideration of the parties' arguments regarding the state district court's assessment of the merits of the omitted claims, the record, and applicable law, the Court finds no legal or factual support for Korona's apparent position that the state district court's adjudication of this Sixth Amendment claim unreasonably applied the law or unreasonably determined the facts. See Richter, 562 U.S. at 101 (reiterating that the question on habeas review under § 2254(d) "is whether the state court's application of the Strickland standard was unreasonable").  As just discussed, the state district court's assessment of the omitted claims instead rests on several reasonable arguments "that [appellate] counsel satisfied Strickland's deferential standard," Richter, 562 U.S. at 105, despite the omission of the claims identified by Korona.  Consequently, § 2254(d) bars relief and the Court denies the amended petition as to claim four.

*CONCLUSION*

Because the Court concludes that it would be futile for Korona to amend his amended petition to add an untimely and unexhausted claim that the state lacked jurisdiction to prosecute him in light of <u>McGirt v. Oklahoma</u>, 140 S. Ct. 2452 (2020), the Court denies his motion to stay this proceeding.  Further, because the Court concludes that Korona has not demonstrated that he is in state custody in violation of the United States Constitution or other federal law, the Court denies his amended petition for writ of habeas corpus.  Finally, because the Court concludes that reasonable jurists would not debate this Court's assessment of Korona's constitutional claims, or the Court's determination that claim one was procedurally defaulted, in part, the Court declines to issue a certificate of appealability.  <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (discussing standards for issuance of a certificate of appealability); Rule 11(a), <u>Rules Governing Section 2254 Cases in the United States District Courts</u>.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall **note** the substitution of Scott Nunn in place of Rick Whitten as party respondent.

2. The motion to stay (Dkt. # 31) is **denied**.

3. Korona's request for an evidentiary hearing, as asserted in his reply brief, is **denied**.

4. The amended petition for writ of habeas corpus (Dkt. # 3) is **denied**.

5. A certificate of appealability is **denied**.

6. A separate judgment shall be entered in this matter.

**DATED** this 2nd day of February, 2022.

_____

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE